IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AERO TRANSPORTATION PRODUCTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MINER ENTERPRISES, INC. AND POWERBRACE CORP., <br><br> Defendants. | Civil Action No. 06-CV-837 JTM <br><br> Magistrate Judge John T. Maughmer <br><br> JURY TRIAL DEMANDED |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION
TO STRIKE THE DESIGNATION OF PLAINTIFF'S TECHNICAL EXPERT,
STEVEN L. HAWKINS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

    A. The Patent-In-Suit Sets Forth Specific Design Parameters For A Railcar Hopper Gate ............................................................................................. 2

    B. A Person Of Ordinary Skill In the Art Of Railcar Hopper Gate Design And Construction Has An Engineering Degree ...................................... 4

    C. Mr. Hawkins Does Not Have An Engineering Degree And Does Not Have Experience In Designing Railcar Hopper Gates ...................................... 5

III. LEGAL STANDARDS .......................................................................................... 7

    A. In The Context Of A Patent Suit, FRE 702 Requires An Expert To At Least Have Ordinary Skill In The Relevant Art ...................................... 7

    B. The Issues In This Case Must Be Determined From The Perspective Of One Of Ordinary Skill In The Relevant Art ............................................ 8

IV. ARGUMENT .......................................................................................................... 9

    A. Mr. Hawkins Is Not Qualified To Testify On The Issues Of Anticipation Or Obviousness Because He Has Less Than Ordinary Skill In The Relevant Art ............................................................................................. 9

    B. Mr. Hawkins Disregards The Court's Ruling On Claim Construction To Conclude That Claims 37-39 Are Anticipated By The Thrall 42x42 Gate ......... 11

V. CONCLUSION .................................................................................................... 14

## I.  INTRODUCTION

This case concerns Miner's U.S. Patent No. 6,899,038 ("the '038 patent") (attached as Exhibit A) which claims a particular design for a hopper car discharge gate assembly. ATP admits that it infringes the '038 patent, but contends that the '038 patent is invalid for anticipation and/or obviousness. In support of its invalidity contentions, ATP submitted two declarations (Exhibit C and D hereto) and proposes to offer the expert testimony of Mr. Hawkins (see Exhibit B hereto), who does not claim *any experience whatsoever* in the art of gate design and construction. Mr. Hawkins clearly lacks the requisite skill in the relevant art, and should therefore <u>not</u> be permitted to testify.

It is well established that invalidity must be determined from the perspective of one of ordinary skill in the art to which the patent pertains. It follows that an expert must be capable of testifying from that perspective. Mr. Hawkins will be unable to do so because he is not, and has never been, a person of ordinary skill in the relevant art. In fact, Mr. Hawkins does not claim any experience in the relevant art, which ATP has admitted is the art of gate design and construction.

ATP tacitly admits that Mr. Hawkins is not a qualified expert by defining the relevant art as "railcar hopper gate <u>design</u> and construction" and defining the level of skill in that art as a "college degree in mechanical engineering or some other equivalent discipline." Mr. Hawkins, who has experience in the general <u>maintenance</u> of railroad equipment and a business administration degree, falls well short of the threshold that ATP itself has set.

In an apparent attempt to preempt this motion, Mr. Hawkins dedicates nearly five pages of his ten page expert report on invalidity (written portion attached as Exhibit B) elaborating upon his experience and qualifications in the railroad industry. Mr. Hawkins misses the point.. Miner does not question that Mr. Hawkins is an accomplished individual in the rail industry and

has a significant amount of experience in the rail industry *relating to maintenance of mechanical equipment*. Mr. Hawkins simply has the wrong kind of experience. Mr. Hawkins does not claim any experience in the art of gate <u>design</u> and only claims experience in the testing, inspecting, repairing, maintaining, and installation of rail equipment. Both the Federal Circuit and many other courts advocate the exclusion of expert testimony under these circumstances, where a proposed expert has no design experience in relevant art.

In addition to Mr. Hawkins' lack of qualifications to testify as an expert in this case, Mr. Hawkins' opinion on anticipation uses improper methodology and ignores the Court's order on the proper construction of the claim limitation calling for the gate to be "ledgeless." In forming his opinions, Mr. Hawkins has created and relied upon a construction of ledgeless that is directly contrary to the Court's construction of that term.

## II.     STATEMENT OF FACTS

### A.     The Patent-In-Suit Sets Forth Specific Design Parameters For A Railcar Hopper Gate

Miner has accused ATP of infringing claims 37-39, 41-45, and 49-52 ("the Asserted Claims") of Miner's U.S. Patent No. 6,899,038 ("the '038 patent") (attached as Exhibit A). ATP admits that it infringes the Asserted Claims, but contends that each of the Asserted Claims are invalid as anticipated and/or obvious in view of the prior art.

In general, the '038 patent covers a particular railroad hopper car discharge gate that was specifically designed to overcome the challenges of transporting and unloading wet corn gluten feed. '038 patent at column 2, lines 26-59. Wet corn gluten feed, a byproduct of ethanol production, is recognized as an excellent food source for livestock, and is preferred over dry corn gluten feed due to improved digestibility and reduced processing costs. *Id.* at column 2, lines 4-25. Despite the advantage wet corn gluten feed has over dry feed, storing and transporting of

wet corn gluten feed in railroad hopper cars is much more difficult since wet corn gluten feed spoils rapidly and tends to form material plugs (or bridges) in the discharge opening of the hopper car during unloading. *Id.* at column 2, lines 15-44. Rudy Fortuna, the inventor of the '038 patent, sought to solve these and other problems by designing a gate that had, among many other important features, a large opening, a tight seal, and would satisfy the stringent Association of American Railroads ("AAR") Standards. *Id.* at column 3, lines 23-45 and column 13, line 65-67.

In designing a gate that included these features, Mr. Fortuna faced significant design challenges. *See* Declaration of Jeremy Dohr at ¶6, 11-15, February 26, 2008 (Doc. No. 62-4). For instance, Mr. Fortuna recognized that increasing the gate opening size would adversely impact the ability of the gate to provide a tight seal and to open with reasonable operating torque, or otherwise comply with the AAR standards. Mr. Dohr's declaration sheds additional light on the challenges of designing a gate having a large opening:

> The design of hopper gates for rail cars is difficult, because there are several inter-related factors, such that changes to one aspect affect several others. **Designing a system that allows for support, effective sealing, maintaining a locked condition when in transport as well as automatic unlocking via low torque transmission to unload a hopper car's commodity relies directly on the design elements and their interaction with one another to meet the American Association of Railroads (AAR) S-233-92 Specification requirements.** . . . For example, the torque required to open the gate must be kept reasonably low, otherwise operators will not be able to open the gate easily, and may be injured if opening torque is too high. . . . The perimeter of the door of the gate must be sealed to prevent material carried by the car from leaking out, and to prevent insects from gaining access to the material carried by the car. To make a gate as large as 42" by 42", the load carried by the door will necessarily increase significantly, and this increased load will affect both the opening torque and the deflection that the door is subjected to when the hopper car is full. The deflection of the door affects the ability to maintain a seal at the perimeter. . . . Increasing the

> number of supports for the door may reduce deflection, but may inhibit the flow of material through the gate, and may adversely affect the amount [of] torque required to open the door . . . . **Simply increasing the size of the components of a gate to handle the increased load is not necessarily a good solution,** since the overall weight of the gate is a concern . . . .

*Id.* at ¶11-15 (emphasis added).¶

To achieve the stated goals, the Asserted Claims specify certain specific and highly detailed <u>design parameters</u> for the gate, such as the configuration of the frame, the size and shape of the discharge opening, the rigidity of the frame, the seal configuration, the structure for supporting the door, the structure for providing motive force to the door, means for enhancing the ability of the door to slide open and close, and the path along which the door moves. Neither the claims nor the specification specify any requirements relating to <u>inspection, testing, maintenance and/or repair</u> of railroad hopper gates.

### B. A Person Of Ordinary Skill In the Art Of Railcar Hopper Gate Design And Construction Has An Engineering Degree

Through its expert, ATP has defined the relevant art to which the '038 patent pertains as "railcar hopper gate <u>design</u> and construction." Hawkin Declaration, Exhibit M to ATP's Motion for Summary Judgment at ¶7, Jan. 21, 2008 [Doc. No. 53-11] (emphasis added) (attached hereto as Exhibit C). Although the Parties disagree on the exact level of ordinary skill in this art field, the Parties agree that a person of ordinary skill in the art would have a college degree in mechanical engineering or some other equivalent discipline. Specifically, ATP (and Mr. Hawkins himself) argue that a person of ordinary skill in that art would have "a college degree in mechanical engineering or some other equivalent discipline." *Id.*

As discussed below, Mr. Hawkins is not qualified to testify from the perspective of one of ordinary skill in the art simply because he does not have a college degree in engineering and has no experience in railcar hopper gate design.

### C. Mr. Hawkins Does Not Have An Engineering Degree And Does Not Have Experience In Designing Railcar Hopper Gates

As explained on the first five pages of his expert report on invalidity (written portion attached as Exhibit B), Mr. Hawkins has spent nearly 40 years in the railroad industry. However, his experience in the rail industry relates to the general maintenance and repair of rail equipment. There is no indication that Mr. Hawkins has any experience designing rail equipment or designing mechanical devices in general. *See also* Declaration of Steven L. Hawkins at ¶3 (Doc. No. 53-11). Moreover, Mr. Hawkins does not have the minimum level of education that Mr. Hawkins has admitted is required to qualify as a person of ordinary skill in the art, i.e., a college degree in mechanical engineering or equivalent discipline. Despite the fact that Mr. Hawkins lacks the requisite engineering degree and only has experience relating to maintenance of mechanical devices, ATP presents Mr. Hawkins as an expert to testify as to "what would be obvious to a person of ordinary skill in the art of railcar hopper gate design and construction." *Id.* at ¶7.

Mr. Hawkin's career in the rail industry began in 1967, when he worked as a machine apprentice for seven months. During that time he "*inspect[ed], test[ed], maintain[ed], and repair[ed]*" locomotives. From 1968 until 1970, Mr. Hawkins served in the military, during which time he was responsible for "*inspecting, maintaining, and repairing*" freight cars, locomotives, and cranes. From 1970 until 1974, Mr. Hawkins served the balance of his machinist apprenticeship, during which time he presumably *inspected, tested, maintained, and repaired"* locomotives. From 1974 until 1977, Mr. Hawkins served as a journeyman machinist. Again, his duties involved "*inspection, testing, maintaining, and overhauling*" locomotives and freight cars. During that same time period, Mr. Hawkins attending college where he earned a bachelor degree in "*business administration*." *See also* Resume of Steven L. Hawkins (Doc. No.

53-11 at page 10, attached hereto as Exhibit C). From 1977 to 1980, Mr. Hawkins was promoted to "Manager of Apprentice Training." His duties included training machinists, electricians and carman apprentices, presumably on how to *inspect, test, maintain, and repair* rail equipment. From 1980 until 1981, Mr. Hawkins served as a diesel shop foreman supervising a team of craftsmen that were responsible for "*inspecting, servicing, maintaining, and repairing*" locomotives. Between 1981 and 1984, Mr. Hawkins served in various supervisory positions involving the "*inspect[ion], maintain[ance] . . . repair*" *and installation* of rail equipment. From 1984 until his retirement in 2006, Mr. Hawkins held various positions at the Burlington Northern Technical Training Center. Mr. Hawkins explains that during his tenure at the Technical Training Center, he was responsible for developing and implementing training programs for freight carmen, which addressed "*inspection, testing, maintenance, and repair*" of freight car components.

As can be surmised from Mr. Hawkins expert report, Mr. Hawkins is thoroughly experienced in the general maintenance of railroad equipment. If this case were about inspecting, testing, servicing, maintaining, repairing, or installing rail equipment, Mr. Hawkins would no doubt be more than qualified to serve as an expert. But, this case is about the challenges facing a <u>degreed engineer</u> who sought to <u>design</u> a gate assembly, and what such a person would find obvious. Mr. Hawkins is not a degreed engineer and he claims no experience in mechanical design. Therefore, Mr. Hawkins should be precluded from testifying as an expert in this case.

### III. LEGAL STANDARDS

#### A. In The Context Of A Patent Suit, FRE 702 Requires An Expert To At Least Have Ordinary Skill In The Relevant Art

Federal Rules of Evidence 702 mandates that proposed expert testimony be propounded by a witness qualified as an expert by knowledge, skill, experience, training, or education:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "district courts must act as gatekeepers to insure that proffered expert testimony is both relevant and reliable." *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003).

The burden is on ATP to demonstrate by a preponderance of the evidence that Mr. Hawkins is a qualified expert witness. *Daubert*, 509 U.S. at 579, 592 n.10; *see also* Fed. R. Evid. 702 advisory committee's note ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence"); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2nd Cir. 2004) (stating that, where the witness lacked qualifications, an analysis of the remaining Daubert factors "seems almost superfluous"). In the context of this patent suit, ATP must show by a preponderance of the evidence that Mr. Hawkins is at least a person of ordinary skill in the relevant art. *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351,1360-61 (Fed. Cir. 2006).

### B. The Issues In This Case Must Be Determined From The Perspective Of One Of Ordinary Skill In The Relevant Art

It is a pervasive requirement in patent law that "facts" must be viewed from the perspective of one of ordinary skill in the art. In this case, Mr. Hawkins has offered an opinion on claim construction[1], anticipation, and obviousness, all of which must evaluated from an objective standpoint with a focus on how a person of ordinary skill in the art would view the facts. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (holding that "the focus in construing disputed terms in claim language is . . . on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean"); *Std. Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (holding that "[t]he issue of obviousness is determined entirely with reference to a hypothetical 'person having ordinary skill in the art'").

The issue of obviousness, in particular, involves a highly factual analysis of several factors, the *Graham* factors, which include: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) objective evidence of non-obviousness, such as commercial success, copying, and failure of others. *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18 (1966). It should be noted that each of these factors, including commercial success, copying and failure of others, is at issue in this case. *See* Miner's Opposition to ATP's Motion For Summary Judgment of Patent Invalidity, especially at pages 35-41 (Doc. No. 62). The Federal Circuit has clearly held that "[t]he perspective from which these findings are made, as well as the ultimate question of obviousness, is that of a person of ordinary skill in the field of invention." *Glaverbel Societe*

---

[1] By offering an opinion on anticipation, and obviousness, Mr. Hawkins has, by implication, offered an opinion on the scope of every claim limitation that has not been construed by the Court.

*Anonyme v. Northlake Mktg. & Supply*, 45 F.3d 1550, 1555 (Fed. Cir. 1995). In the context of an obviousness analysis, "the level of skill in the art is a prism or lens through which a judge or jury views the prior art and the claimed invention." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999). "This reference point prevents these deciders from using their own insight or, worse yet, hindsight, to gauge obviousness." *Id.*

IV. **ARGUMENT**

    A. **Mr. Hawkins Is Not Qualified To Testify On The Issues Of Anticipation Or Obviousness Because He Has Less Than Ordinary Skill In The Relevant Art**

Mr. Hawkins is <u>not</u> qualified to testify as an expert on invalidity in this case because he is not, and has never been, a person of ordinary skill in the art to which the '038 patent pertains. Mr. Hawkins has extensive experience in the maintenance and repair of rail equipment, but does not claim <u>any</u> experience in the art of "railcar hopper gate <u>design</u> and construction." Hawkins Declaration, Exhibit M to ATP's Motion for Summary Judgment at ¶7, Jan. 21, 2008 [Doc. No. 53-11] (emphasis added) (attached hereto as Exhibit C). Mr. Hawkins also clearly does not meet the threshold that he himself has set regarding the requisite level of skill in this art; i.e., a college degree in mechanical engineering or some other equivalent discipline. *Id.* Mr. Hawkins does not have an engineering degree, but instead has a business administration degree. *Id.* at p. 10.

The burden is on ATP to demonstrate that Mr. Hawkins is a qualified expert witness. *Daubert*, 509 U.S. at 579, 592 n.10; *see also* Fed. R. Evid. 702 advisory committee's note ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."); *Zaremba*, 360 F.3d at 360 (stating that, where the witness lacked qualifications, an analysis of the remaining Daubert factors "seems almost superfluous"). In the particular context of this patent suit, ATP must show by a

preponderance of the evidence that Mr. Hawkins has experience in the art of gate design and construction and is at least a person of ordinary skill in that art. ATP will be unable to do so.

Both the Federal Circuit and numerous other courts advocate the exclusion of expert testimony from persons who, like Mr. Hawkins, lack design experience in the relevant art. *Flex-Rest,* 455 F.3d at 1360-61; *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 485 F. Supp. 2d 310, 321 (D.N.Y. 2007) (declining to consider a proposed expert's testimony because he was not a person of ordinary skill in the art); *Tel-Lock, Inc. v. Thomson Consumer Elecs.*, 2005 U.S. Dist. LEXIS 7224, 24-25 (D. Ill. 2005) ("The court cannot imagine how an individual lacking even ordinary skill in the relevant art can offer reliable expert testimony regarding the same art"); *Heidelberger Druckmaschinen AG v. Ohio Elec. Engravers, Inc.,* 2000 U.S. Dist. LEXIS 6581, *12 n.4 (N.D. Ill. 2000) (finding that "[o]ne with greater than ordinary skills can still provide useful testimony as to the hypothetical person of ordinary skill, [but o]ne with less than ordinary skill in the art . . . is not likely to be able to provide useful testimony"); *Exxon Research & Eng'g Co. v. United States*, 46 Fed. Cl. 278, 297 (Ct. Cl. 2000) (reversed on other grounds) (stating that a witness who is not one of skill in the art "is more likely to have been mistaken in estimating the ability of a person with ordinary skill in the art").

In *Flex-Rest*, the Federal Circuit upheld the exclusion of testimony from a witness who lacked design experience in the relevant art. The patent at issue in *Flex-Rest* related to computer keyboard positioning systems. *Id.* at 1354. The district court accordingly found that one skilled in that art of the invention was a keyboard designer. *Id.* at 1360. To support its claim that the patent-in-suit was invalid for anticipation and obviousness, the accused infringer offered the testimony of an expert whose area of expertise was in ergonomics rather than keyboard design. *Id.* Not surprisingly, the district court precluded that expert from testifying on the issues of

anticipation and obviousness because, having insufficient design experience, "he was not one of ordinary skill in the art at the time of the invention." *Id*

Like the proposed expert in the *Flex-Rest* case, Mr. Hawkins lacks design experience in the relevant art. Mr. Hawkins has extensive experience with testing, inspecting, maintaining, repairing, and installing gate assemblies, but has no experience in designing gate assemblies. Mr. Hawkins, like the proposed expert in *Flex-Rest*, should be precluded from testifying on the issues of anticipation and obviousness.

### B. Mr. Hawkins Disregards The Court's Ruling On Claim Construction To Conclude That Claims 37-39 Are Anticipated By The Thrall 42x42 Gate

If it were not enough that Mr. Hawkins lacks the requisite experience to testify on the issue of invalidity, Mr. Hawkins uses flawed methodology to conclude that Claims 37-39 are anticipated by the Thrall 42x42 gate. In a blatant attempt to confuse the Court (and ultimately, the jury), Mr. Hawkins uses a strained and convoluted interpretation of the Court's ruling on claim construction to arrive at his erroneous conclusion that several of the Asserted Claims are invalid for anticipation.

A determination that a patent is invalid typically involves a two-step process. *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). First, the court determines the scope and meaning of the patent claims at issue. *Id*. That step, claim construction, is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). When an asserted ground of invalidity is anticipation under 35 U.S.C. § 102 or obviousness under 35 U.S.C. § 103, the second step involves a comparison of the <u>properly construed</u> claims with the prior art. *Key Pharms.*, 161 F.3d at 714.

The claims have already been construed in this case, and all Parties are bound to use that construction in evaluating the issues of invalidity and infringement. Specifically, the Court

construed the term "ledgeless" as referring "to a gated discharge opening in which the gate is not supported on ledges or runners which extend inwardly of the side walls of the discharge opening." Court Order On Claim Construction, Doc. No. 37, September 11, 2007. During the hearing on claim construction ("the *Markman* hearing"), the Court made clear that the term "ledgeless" refers to the structure for supporting the door and does not depend upon the presence or absence of structure above the door:

> With respect to the description and definition of the term "ledgeless" and the claim construction for that term, I am persuaded that ledgeless refers to the support structure of the gate and not the convergence or the nonconvergence of the walls or structures above the gate. I think those are two different concepts. While it may be appropriate to refer to the convergence or nonconvergence of the wall structure above the gate, the term ledgeless in this case simply is not intended to refer to that concept. The term ledgeless does refer, in my judgment, to the support structure for the gate, and, therefore, I am adopting the construction of the term "ledgeless" as referring to the discharge opening of the gate opening in which a gate is not supported on ledges or runners which can be inwardly of the side walls of the discharge opening.

Transcript Of Judge's Findings, Aug. 27, 2007.

Following the mandates of the Court regarding the meaning of "ledgeless," it is inescapable that the Thrall 42x42 gate is ledged:



*See* Exhibit D to ATP's motion for summary judgment of invalidity (Doc. No. 53).

Instead of using the Court's straightforward and simple construction of the term "ledgeless," Mr. Hawkins proposes a convoluted interpretation of the Court's ruling that requires the ledge to extend further into the discharge opening than structure that is present <u>above</u> the door. In paragraph 1 of his Supplemental Declaration (attached as Exhibit D), Mr. Hawkins defines the side wall of the discharge opening as the extreme tip of an angle member which is above the door:



EXCERPT FROM HAWKINS SUPPLEMENTAL DECLARATION

Mr. Hawkins argues that the Thrall gate is ledgeless because the door support (identified as G in the figure above) does not extend further into the opening than the tip of the angle member.

As an initial matter, the fact that ATP did not argue this definition during the claim construction phase is telling. Only now, after its convergence/nonconvergence argument was rejected by the Court does it propose this wholly unsupported interpretation of the term "ledgeless." In addition, Mr. Hawkins ignores that the '038 patent itself discloses a similar angle

Case 4:06-cv-00837-JTM   Document 80-1   Filed 04/01/08   Page 15 of 17

structure above the door, yet does not refer to the angle structure as comprising part of the discharge opening (see reference numeral 40 and structure highlighted in yellow).



'038 Patent, Figure 2.

To the extent that the Court allows Mr. Hawkins to testify on invalidity, he should be precluded from presenting his position on anticipation since it is confusing, disregards the law of the case, and improperly invites the jury to disregard the Court's claim construction.

## V.     CONCLUSION

On the basis of the foregoing analysis of fact and law, the Court should grant Miner's motion to strike Mr. Hawkins's designation as an expert in this case and exclude Mr. Hawkin's testimony and any of his demonstrative exhibits at trial. Moreover, the Court should disregard the declarations of Mr. Hawkins which were submitted by ATP in support of its Motion for Summary Judgment of Invalidity.

To the extent that Mr. Hawkins is allowed to testify, his testimony should be limited to any relevant testing, inspection, maintenance, repair, and installation issues (if there are any), and he should not be allowed to testify as an expert in the art of gate design.

| | |
|---|---|
| April 1, 2008 | Respectfully submitted, |
| | /s/ *David I. Roche* <br> David I. Roche (pro hac vice) <br> Daniel A. Tallitsch (pro hac vice) <br> BAKER & MCKENZIE LLP <br> David.I.Roche@BakerNet.com |
| Of Counsel: | 130 E. Randolph Drive <br> Chicago, IL 60601 |
| George E. Leonard (MO Bar No. 19145) <br> SHUGHART THOMSON & KILROY <br> gleonard@stklaw.com <br> Twelve Wyandotte Plaza <br> 120 W. 12th Street <br> Kansas City, MO 64105 <br> Phone: 816-421-3355 <br> Fax 816-374-0509 | Phone: 312-861-8000 <br> Fax: 312-698-2363 <br><br> Attorneys for Defendants |

**Certificate of Service**

Pursuant to Rule 5.1 of the Local Rule, this document and its attachments are being transmitted by e-mail to the person(s) at the e-mail address(es) set forth below via the ECF system of this District on the date indicated below.

Victoria L. Smith    vsmith@stinson.com, smithv@stinson.com

J. David Wharton    dwharton@stinson.com, nsteele@stinson.com

I declare under penalty of perjury under the laws of the State of Illinois that the above is true and correct.

Executed on April 1, 2008, at Chicago, Illinois    s/David I. Roche
David I. Roche