IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AERO TRANSPORTATION PRODUCTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MINER ENTERPRISES, INC. AND POWERBRACE CORP.,<br><br>Defendants. | Civil Action No. 06-CV-837 JTM<br><br>Magistrate Judge John T. Maughmer<br><br>JURY TRIAL DEMANDED |

**REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION
TO STRIKE THE DESIGNATION OF PLAINTIFF'S TECHNICAL EXPERT,
STEVEN L. HAWKINS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. MR. HAWKINS' QUALIFICATIONS AND OPINIONS DO NOT MEET THE REQUIREMENTS OF *DAUBERT* ...................................................................... 1

    A. Mr. Hawkins has admitted that he is not qualified to design a hopper car gate. ........................................................................................................... 1

    B. There is no factual basis supporting Hawkins' opinion that the prior art discloses flange portions that are generally normal to wall structure. ................ 5

    C. Hawkins is not capable of providing a reliable opinion in this case ................ 6

    D. There is no factual basis supporting Hawkins' opinion that the Thrall gate anticipates claims 37-39 of the '038 patent. ...................................................... 7

    E. Mr. Hawkins' attempts to retract and change his testimony are unavailing. ......... 8

III. CONCLUSION .................................................................................................. 10

## I. INTRODUCTION

The parties' experts have agreed that the "person of ordinary skill" in the art in this case has a degree in mechanical engineering or an equivalent discipline. The level of education and training possessed by the hypothetical person of ordinary skill is important in this case (as in all patent cases), because legal issues, such as anticipation and obviousness of the claimed inventions, must be analyzed through that person's eyes. A degree in mechanical engineering is required of any technical expert in this case because the challenges of designing the structures and mechanisms for use on hopper cars are sophisticated, and cannot properly be addressed by anyone who may have some mechanical aptitude for maintaining and repairing such gates.

## II. MR. HAWKINS' QUALIFICATIONS AND OPINIONS DO NOT MEET THE REQUIREMENTS OF *DAUBERT*

Based on testimony at his recent deposition (Exhibits E and F), it is clear that Mr. Hawkins is unqualified and that his opinions are completely unfounded and based upon verifiably false assumptions.[1] Allowing Mr. Hawkins to testify at trial would be contrary to the Federal Rules of Evidence 702, which requires "any and all scientific testimony or evidence admitted [to be] not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

### A. Mr. Hawkins has admitted that he is not qualified to design a hopper car gate.

ATP argues that Mr. Hawkins is qualified to testify as an expert on invalidity in this case because he has spent several years repairing and maintaining railcars. *See* Plaintiff's Response at 1 (Doc. No. 89). As revealed by Mr. Hawkins' deposition testimony, ATP's claims are nothing more than puffery:

```
14  Q.  Have you yourself repaired or replaced a
15      hopper car gate?
16  A.  I have not. …
```

---

[1] Miner will provide as Exhibit E to this Reply, video excerpts of the deposition of Mr. Hawkins on disc, and as such Exhibit E will not be filed electronically.
   **NOTE**: In this Reply, lettering of exhibits continues from the end of lettering in Miner's Opening Brief, which ended with Exhibit D.

Exhibit F, Hawkins Deposition, page 9

ATP also claims that Mr. Hawkins' "vast experience" working with hopper gates compensates for his not having an engineering degree. However, Mr. Hawkins repeatedly admitted that he lacks the education, analytical skill and design abilities of a degreed engineer:

```
16  Q.  Do you have any understanding of the kind of
17      courses that you take when you get a degree
18      in mechanical engineering?
19  A.  No, other than -- I would assume that it
20      would require a great deal of math and some
21      sciences, but specifically what, no, because
22      that's not the course of study I pursued in
23      my life.
24  Q.  What sort of math courses have you had?
25  A.  Algebra would be the -- probably the most
 1      significant.
 2  Q.  Did you take that in --
 3  A.  High school.
 4  Q.  High school.
 5  A.  High school algebra.
```

Exhibit F, Hawkins Deposition, page 13-14

```
11  Q.  Do you know the difference in load that has
12      to be handled by a -- the door of a 42-inch
13      gate as compared to a 30-inch gate?
14  A.  I know there is a difference.  The exact
15      amount I don't know.
16  Q.  How would you go about calculating that
17      difference?
18  A.  Well, I wouldn't because I'm not an engineer
19      in design, but I can give you a rough
20      estimate.  I don't have that ability.  I'm
21      not a design person, but you have to be
22      concerned about the column load that's on it
23      and, obviously, when you go to a wider gate
24      you're going to have more load on there.
25      But how to calculate that load, I don't

 1      know.  Is that kind of what you're asking?
```

Exhibit F, Hawkins Deposition, page 53-54

Mr. Hawkins cannot even articulate what issues an engineer would face when asked to

solve the problem that Mr. Fortuna (the inventor of the patent-in-suit) faced when asked to make a large-sized hopper car gate.

> 4   Q.  What sorts of design challenges are
> 5       presented with an engineer who's asked to go
> 6       make a gate, increasing its opening size
> 7       from 30 to 42 inches, approximately, square?
> 8   A.  What does "challenges" mean?
> 9   Q.  What sorts of engineering problems are
> 10      presented?
> 11  A.  Can you be more specific?  I mean --
> 12  Q.  What would the engineer have to be concerned
> 13      with?
> 14  A.  Well, they'd have to be concerned with
> 15      whether you can open and close the gate.  I
> 16      don't know what you're looking for.
> 17  Q.  Anything else?
> 18  A.  What are you asking for?  I mean, ask me
> 19      what -- you know --
> 20  Q.  What design issues?
> 21  A.  I'm not a design person.  I'm not an
> 22      engineer, if that's your point.  I couldn't
> 23      tell you, other than what I've explained.
> 24  Q.  So you can't think of any other issues that
> 25      a design engineer might have to address in
> 1       going -- increasing the size of a gate from
> 2       30-by-30 to 42-by-42?
> 3   A.  I'm not a design engineer so I don't -- I
> 4       can't answer your question.

Exhibit F, Hawkins Deposition, page 55-56

> 17  Q.  Okay.  Would the additional runner that you
> 18      add -- if you're increasing the size from
> 19      30-by-30 to 42-by-42, would it be the same
> 20      size and type of runner?
> 21  A.  Don't know.  I'm not an engineer….

Exhibit F, Hawkins Deposition, page 59

> 10  Q.  Would you calculate the moment of inertia of
> 11      support?
> 12  A.  I don't know how.
> 13  Q.  So you wouldn't do that?
> 14  A.  No.  I don't know how.  …

Exhibit F, Hawkins Deposition, page 108

The only knowledge relating to hopper car gates that Mr. Hawkins has is the supervision of others who install and maintain such gates. This case is *not* about a method or system for installing or maintaining hopper car gates. It is about the design of hopper car gates, and whether significant changes in the design of a hopper gate would have been obvious to a degreed engineer in late 2002.

Not only does Mr. Hawkins lack the education and experience necessary to speak with any authority about what would be obvious to a person of ordinary skill in the art, neither he nor the people he has supervised have ever even made a suggestion on how to design or revise a hopper car gate:

```
12   Q.  Did there ever come a time in your dealings
13       on hopper car gates where you made a
14       suggestion for how the gate might be
15       revised?
16   A.  No.
17   Q.  Has anybody under your supervision ever made
18       a suggestion on how to revise the design of
19       a gate?
20   A.  No, not that I recall. …
```

Exhibit F, Hawkins Deposition, page 10

Typically, *none* of the people with whom Mr. Hawkins had dealings in his career as the head of a training school had mechanical engineering degrees – most of them had only high school diplomas. Exhibit F, Hawkins Deposition, page 11-12

Hawkins admitted that he has no experience dealing with corn gluten or anything like corn gluten, which is the material discussed in the specification of the patent-in-suit as the material that the patented gate was specifically designed to handle.

```
15   Q.  Do you have any experience with dealing with
16       corn gluten?
17   A.  I do not.
18   Q.  Anything like corn gluten?
19   A.  No.
```

Exhibit F, Hawkins Deposition, page 132.

Hawkins also disclaimed any knowledge or experience associated with issues relating to the manufacture of gates like those at issue in this case:

```
 6  Q. Does it surprise you, or would it surprise
 7     you, if Mr. Early said that he had a
 8     preference for -- from a manufacturing
 9     standpoint -- to have sloping side walls?
10  A. I have no opinion either way. You know, I
11     don't know why he would say that. I have no
12     opinion.
13  Q. Because you're not familiar with the
14     manufacturing of gates?
15  A. That's correct. You know, I wouldn't know
16     why he would have a preference one way or
17     the other.
```

Exhibit F, Hawkins Deposition, page 144.

Thus, Mr. Hawkins lacks any experience that could arguably make up for his lack of an engineering degree. Mr. Hawkins testimony will not assist the trier of fact in deciding whether the asserted claims of the '038 patent are invalid, and would only serve to confuse the jury.

**B.   There is no factual basis supporting Hawkins' opinion that the prior art discloses flange portions that are generally normal to wall structure.**

In his report, Mr. Hawkins opines that both the Thrall TC4242 gate and the Miner 30x30 gate disclose end frame members having wall structure with a first flange portion joined to and extending in a generally <u>normal</u> relation away from an upper end of said wall structure, as called for by claims 41 and its dependent claims. See Exhibit A (i.e., the 038 patent) and Exhibit C to Miner's Opening Brief, (i.e., Exhibit M to Expert Report of Hawkins at ¶¶11, 15-23). Although the Court did not construe the term "normal", a person of skill in the art would know that the term "normal" means perpendicular, as per the following dictionary definition:

> **Normal to a surface** [MATH] The normal to a surface at a point is the line perpendicular to the tangent plane at that point.

McGraw-Hill Dictionary of Scientific and Technical Terms, 4th Edition, 1989 (Exhibit G).

During his deposition, Mr. Hawkins revealed that, prior to his deposition, he did not know that the term "normal," in a geometric sense, means perpendicular. See Exhibit F, Hawkins

-5-
Case 4:06-cv-00837-JTM   Document 104   Filed 05/08/08   Page 7 of 14

Deposition, pages 65-67. Instead, Mr. Hawkins understood the term normal to mean "the way things usually are" or the way "it's supposed to be." Exhibit F, 65:7-8 and 67:7-10.

Therefore, Mr. Hawkins' opinions lack a sufficient factual basis, and are clearly not the product of reliable principles and methods. Mr. Hawkins opinion that claims 41-45 and 49-52 are obvious should therefore be precluded from trial.

### C. Hawkins is not capable of providing a reliable opinion in this case

The prospect of Mr. Hawkins attempting to explain to a jury what would have been obvious in 2002 to a degreed engineer (i.e., the person of ordinary skill in the art) is highly problematic. As noted by the Court of Claims: "As someone with less expertise, [the proffered expert who lacked design experience] is more likely to have been mistaken in estimating the ability of a person with ordinary skill in the art." *Exxon Research & Engineering Co. v. United States*, 46 Fed. Cl. 278, 297 (Fed. Cl. 2000).

Based on admissions at his deposition, Mr Hawkins knows nothing about how a person of ordinary skill would approach the task of re-designing a hopper gate to double its capacity, or to re-design a gate to handle corn gluten. Mr. Hawkins would do what the Court of Claim in *Exxon* warned about – he has grossly underestimated the difficulty of the issues associated with the invention, because he lacks the education and training necessary to appreciate that difficulty.

ATP's criticism of Miner's reliance on the *Exxon* case ignores the fact that the court found that the expert had *more than* skill in the art, so there was no risk that he would overestimate the abilities of one of skill in the art. Grossly overestimating the ease of invention is exactly what Mr. Hawkins has done and will do at trial in this case, if he is allowed to testify. Hawkins admitted that he did not understand the problems facing a design engineer. As discussed by Mr. Dohr and Miner's expert, Mr. Daum, both of whom are mechanical engineers, there are many significant hurdles in designing a functional outlet gate, including: 1) providing sufficient support under dynamic loading conditions to avoid excessive bending, 2) achieving effective seals under dynamic loading conditions, 3) keeping opening torque at an acceptable level, etc. See Declaration of Jeremy Dohr (Docket No. 62-4).

As the Federal Circuit has recently cautioned: "We must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008). Mr. Hawkins cannot explain how a person of ordinary skill would combine prior art references or why, because he has never been or worked with a person of ordinary skill in the art relevant to this case. Because he lacks qualifications in both experience and education, Mr. Hawkins is necessarily relying on hindsight to reach his conclusions on obviousness.

> **D.** **There is no factual basis supporting Hawkins' opinion that the Thrall gate anticipates claims 37-39 of the '038 patent.**

When it comes to Mr. Hawkins' conclusions about anticipation, he has twisted the court's claim construction based entirely on a convoluted reading of the words used by the Court in its ruling. However, Mr. Hawkins again is attempting to do something of which he is not capable, i.e., applying the court's ruling as a person of ordinary skill in the art would. Thus, for the same reason that Mr. Hawkins is not capable of validly opining on the issue of obviousness, he is not capable of providing worthwhile opinions on the issue of anticipation.[2]

As a basis for his opinion that the Thrall TC4242 gate anticipates claims 37-39, Mr. Hawkins contends that the Thrall gate is ledgeless. *See* Miner's Opening Brief Exhibits A (the '038 patent) and C (i.e., the Exhibit M at ¶12-14 Hawkins' Report). Mr. Hawkins's deposition testimony, however, reveals that there is no factual basis for this contention.

The Court has construed the term "ledgeless" to mean "a gated discharge opening in which the gate is not supported on ledges or runners which extend inwardly of the side walls of the discharge opening." Order at ¶3, Sept. 11, 2007 (Doc. No. 37). During his deposition, Mr. Hawkins was presented with the Court's construction of ledgeless and a drawing of the Thrall TC4242 gate, and was asked to "mark what's the side wall." Exhibit F, 97:9-98:5. Mr. Hawkins

---

[2] Invalidity under §102 is often referred to as "anticipation". "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention." *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1322-1323 (Fed. Cir. 2006).

-7-

proceeded to mark a cross-section of the side frame member of the Thrall TC4242 gate with a yellow highlighter, as shown below:



Exhibit H - Hawkins Deposition Exhibit 6.

With respect to the his markings in the figure above, Mr. Hawkins confirmed that the sidewall of the discharge opening extended all of the way down to the lead line which extends from the letter "E", that the structure identified as "C or G" is the runner for supporting the gate, and that the runner extends inwardly from the sidewall of the discharge opening. See Exhibit F, Hawkins Deposition, page 98-99.

Mr. Hawkins attempts to avoid the consequences of his admission, by arguing that the Thrall runner is "not extending out into the opening." *Id.* at 99:1-9. However, he ignores that the Court did not construe ledgeless to mean that the support must not extend out into the opening, but instead ruled that the term ledgeless means that the "ledges or runners [must not] extend inwardly of the <u>side walls</u> of the discharge opening." Order at ¶3 (Doc. No. 37) (emphasis added). Although he contends that the Thrall runners do not extend into the opening, Mr. Hawkins unequivocally admits that the Thrall runners extend inwardly of the side walls of the discharge opening. See Exhibit F, Hawkins Deposition, page 99

### E. Mr. Hawkins' attempts to retract and change his testimony are unavailing.

After his deposition, and obviously after having spoken with ATP's attorneys, Mr. Hawkins attempted to retract much of what he said, by submitting a Statement Of Change Or

Correction (i.e., "errata sheet") (Exhibit I). The errata sheet clearly reflects the testimony that ATP's attorneys wishes Mr. Hawkins had given, not the testimony he actually gave. Mr. Hawkins's errata sheet goes far beyond mere corrections misstatements, and attempts to completely change his testimony. Mr. Hawkins changes are not "corrections" but are instead purposeful rewrites that are tailored to help avoid a ruling excluding Mr. Hawkins's testimony. Exhibit J is a sampling of the incredible changes that Hawkins seeks to make.

Although Fed. R. Civ. P. 30(e) allows deponents to make changes to their sworn deposition testimony in certain circumstance, the degree to which Mr. Hawkins attempts to change is testimony is not permissible.[3] The Eighth Circuit has not squarely addressed the issue of whether a deponent can contradict her deposition testimony via an errata sheet; however, under the law of the Seventh, Ninth, and Tenth Circuits, Mr. Hawkins corrections would not be permissible. *See Hambleton Brothers Lumber Co. v. Balkan Enterprises, Inc.,* 397 F.3d 1217, 1225 (9th Cir. 2005) ("We agree with our sister circuits' interpretation of FRCP 30(e) on this point, and hold that Rule 30(e) is to be used for corrective, and not contradictory, changes").

In *Thorn v. Sundstrand Aero. Corp.*, the Seventh Circuit held that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a "not." 207 F.3d 383, 389 (7th Cir. Ill. 2000). The reasoning behind this rule is stated best in the Tenth Circuit case of *Burns v. Board of County Commissioners of Jackson County*:

> [Rule 30(e)] cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

330 F.3d 1275, 1282 (10th Cir. 2003). The standard under the Tenth Circuit is slightly

---

[3] Rule 30(e) provides in relevant part as follows: "if requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them." Fed. R. Civ. P. 30(e).

more restrictive than the Seventh, and requires "a court . . . to consider: whether the [deponent] was cross-examined during his earlier testimony, whether the [deponent] had access to the pertinent evidence at the time of his earlier testimony or whether the [Rule 30(e) correction] was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the [Rule 30(e) correction] attempts to explain." *Id.* (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

Under any standard, Mr. Hawkins changes are impermissible. The changes he proposes are contradictory and are not merely the correction of an error in transcription. Moreover, Mr. Hawkins was cross-examined by ATP's counsel, who failed to rehabilitate the witness or elicit favorable testimony on the issues which are the subject of the errata sheet. Mr Hawkins also does not claim that he did not have the pertinent evidence at the time of his testimony, or that he has found new evidence. Although Mr. Hawkins claims confusion as a basis for many of his corrections, a fair reading of his testimony does not reflect any confusion.

The quantity and significance of Mr. Hawkins's changes to his testimony are inexplicable. Under the Seventh, Ninth, and Tenth Circuit law, the substantive and contradictory changes that Mr. Hawkins attempts are impermissible. There is no basis for applying a different standard in this Circuit. *See Wigg v. Sioux Falls Sch. Dist. 49-5*, 274 F. Supp. 2d 1084, 1090-91 (D. S.D. 2003) (adopting the Tenth Circuit Standard) (reversed on other ground). Hawkins' errata sheet is subject to being stricken and should not be considered for purposes of this motion. S*ee Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488-89 (9th Cir. 1991) (dismissing with prejudice and granting Rule 11 sanctions against a party and its counsel because the attorney, in an effort to avoid summary judgment, made substantive changes to the party's deposition testimony in violation of Fed. R. Civ. P. 30(e)).

## III. CONCLUSION

The court should preclude ATP's expert, Mr. Hawkins, from testifying at trial.

May 8, 2008                                         Respectfully submitted,

                                                    /s/ *David I. Roche*
                                                    David I. Roche (pro hac vice)
                                                    Daniel A. Tallitsch (pro hac vice)
                                                    BAKER & MCKENZIE LLP
Of Counsel:                                         David.I.Roche@BakerNet.com
                                                    130 E. Randolph Drive
George E. Leonard (MO Bar No. 19145)                Chicago, IL 60601
SHUGHART THOMSON & KILROY                           Phone:  312-861-8000
gleonard@stklaw.com                                 Fax:    312-698-2363
Twelve Wyandotte Plaza
120 W. 12th Street                                  Attorneys for Defendants
Kansas City, MO 64105
Phone:   816-421-3355
Fax      816-374-0509


**List of Exhibits**

Exhibit E    Video Excerpts of Hawkins Deposition (not filed electronically)
Exhibit F    Transcript of Hawkins Deposition
Exhibit G    Definition of "normal to a surface" – McGraw-Hill Dictionary of Technical and
             Scientific Terms
Exhibit H    Hawkins Dep. Exhibit 6
Exhibit I    Errata Sheet for Hawkins Deposition
Exhibit J    Table of Key Hawkins Deposition Testimony As "Corrected"

## Certificate of Service

Pursuant to Rule 5.1 of the Local Rule, this document and its attachments are being transmitted by e-mail to the person(s) at the e-mail address(es) set forth below via the ECF system of this District on the date indicated below.

Victoria L. Smith    vsmith@stinson.com, smithv@stinson.com

J. David Wharton    dwharton@stinson.com, nsteele@stinson.com

I declare under penalty of perjury under the laws of the State of Illinois that the above is true and correct.

Executed on May 8, 2008, at Chicago, Illinois       s/David I. Roche
                                                           David I. Roche